**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Joseph Argenas d/b/a Twister's Ice Cream, | ) ) | Case No. 2:20-cv-770 |
| Plaintiff, | ) ) ) | **District Judge J. Nicholas Ranjan** |
| v. | ) ) ) | |
| Nationwide Mutual Insurance Company, and Nationwide Property and Casualty Insurance Company | ) ) ) | *Electronically filed* |
| Defendants. | ) ) ) | |

**BRIEF IN SUPPORT OF DEFENDANT NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Nationwide Property and Casualty Insurance Company ("Nationwide"), by its undersigned counsel, hereby submits the following Brief in Support of its Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6).

**I.    INTRODUCTION.**

Plaintiff Joseph Argenas operates an ice cream shop (Twister's Ice Cream) in Pittsburgh, Pennsylvania. He alleges his insurance policies provide coverage for the business losses he suffered stemming from the SARS-CoV-2 coronavirus and/or its resulting disease, COVID-19. The previously named defendant, Nationwide Mutual Insurance Company, moved to dismiss Mr. Argenas's original Complaint because Mr. Argenas had named the wrong defendant, and more importantly, because Mr. Argenas's insurance policies include a virus exclusion, which bars coverage for his claim.

Rather than oppose the motion to dismiss, Mr. Argenas filed a First Amended Complaint

adding the proper named defendant (Nationwide Property and Casualty Insurance Company) and voluntarily dismissed the improper defendant (Nationwide Mutual Insurance Company). The First Amended Complaint, however, does nothing to address the fact that Plaintiff's insurance claim is still barred by the clear and unambiguous terms of Plaintiff's insurance policies. In fact, it appears the First Amended Complaint is a cookie cutter form from other proceedings inasmuch as it mistakenly alleges that Mr. Argenas's Pittsburgh ice cream store is a "trucking school" subject to governmental orders in California and Colorado. *See* FAC ¶¶ 32, 75.

In any event, like the original Complaint, the First Amended Complaint fails to state a claim and should be dismissed as a matter of law. Specifically, Mr. Argenas's policies contain a virus exclusion, which expressly excludes coverage in this case:

> We will not pay for loss or damage caused directly or indirectly by any of the following . . . regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . . virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*See* Premier Businessowners Policies at § (B)(1)(i) (copies attached as Exs. A & B; excerpts attached as Ex. C).

It is black-letter law that this Court should apply the policies – including the clear and unambiguous virus exclusion – as written. Indeed, this Court and other courts applying Pennsylvania law have enforced a variety of clear and unambiguous policy exclusions, including similar mold/bacteria exclusions. This Court should do the same here.

Mr. Argenas also alleges that his policies provide coverage under a "Civil Authority" provision, including Civil Authority coverage for business income. The virus exclusion, however, plainly applies to and bars coverage under the policies' "Civil Authority" provision as well. Furthermore, "Civil Authority" coverage only applies where Mr. Argenas has been prohibited

2

from accessing his premises and where there has been a "necessary" suspension of operations. *See* Exs. A & B at §§ A(5)(g) & (j). Neither occurred here. The governmental orders cited by Mr. Argenas in the First Amended Complaint expressly permitted food establishments like Mr. Argenas's ice cream shop to continue providing customers with pick up, delivery and drive-through services. There simply was no denial of access to the insured premises nor was there a necessary suspension of operations. Mr. Argenas has no claim for coverage under the terms of the policies, and his Complaint should be dismissed with prejudice as a matter of law.

Lastly, Mr. Argenas's claim should be dismissed because this Court lacks personal jurisdiction as to the claims of the putative non-forum class members.

**II.     BACKGROUND.**

      **A.     First Amended Complaint Allegations.**

Plaintiff Joseph Argenas owns and operates Twister's, an ice cream shop located in Pittsburgh, Pennsylvania. *See* FAC ¶ 8. Mr. Argenas alleges that Nationwide issued business insurance policy numbers ACP BPFK 5422666978 and ACP BPFK5432666978 for coverage from May 7, 2019 to May 7, 2020, and from May 7, 2020 to May 7, 2021, respectively. *See* FAC ¶ 10. The declaration pages for the policies (but not the policies themselves) are attached to the First Amended Complaint as Exs. 1 and 2.

Mr. Argenas alleges the policies contain a "Civil Authority" provision, which provides coverage when access to the insured property is denied by order of civil authority. *See* FAC ¶¶ 14, 15. Mr. Argenas alleges the Pennsylvania Governor issued various orders beginning March 6, 2020, which required non-essential businesses to close. *See* FAC ¶¶ 43-46. Mr. Argenas acknowledges, however, that take out services were still permitted at food establishments. *Id.* at ¶ 46.

Mr. Argenas does not allege that any governmental order prohibited him from continuing to sell ice cream at Twister's. Rather, Mr. Argenas alleges that his Twister's store is a seasonal ice cream shop that opens in mid-March each year. *See* FAC ¶ 65. Mr. Argenas alleges that he intended to open his store but *chose not to do so* when the Pennsylvania Governor issued his March 19, 2020 order closing non-essential businesses. *Id.* at ¶¶ 65-66.

Mr. Argenas alleges he submitted a claim for coverage for business loss and business interruption. *See* FAC ¶ 12. He alleges Nationwide denied the claim for several reasons, including the lack of physical damage to his property, and because of the Virus Exclusion Clause in the policy. *Id.*

Based on these allegations, Mr. Argenas asserts a single claim for declaratory judgment. *See* FAC ¶ 76. Mr. Argenas also seeks certification of a national class of insureds with policies issued by Nationwide, and who allegedly have suffered business interruption losses as the result of civil authority orders and the coronavirus. *See* FAC ¶ 56.

Lastly, Mr. Argenas has voluntarily dismissed defendant Nationwide Mutual Insurance Company, and has now named the correct defendant, Nationwide Property and Casualty Insurance Company, which is the entity that issued Mr. Argenas's insurance policies.

  **B.**  <u>**Relevant Terms of The Subject Policies.**</u>

Copies of the subject policies are attached as Exs. A and B to this Motion. The coverage provisions of the two policies are identical, but cover differing time periods (May 7, 2019 to May 7, 2020, and May 7, 2020 to May 7, 2021). For the Court's convenience, excerpts of the relevant provisions are attached as Ex. C.

Generally, the policies provide coverage for "direct physical loss of or damage to Covered Property at the described premises . . . caused by or resulting from any Covered Cause of Loss."

*See* Exs. A & B at § (A); *see* Ex. C at p.2 of 42.  Additional "Civil Authority" coverage is provided "[w]hen a Covered Cause of Loss causes damage to property other than the property at the described premises . . . caused by action of civil authority that prohibits access to the described premises[.]"  *See* Exs. A &B at § (A)(5)(j); *see* Ex. C at p.8 of 42.  In short, the policies only provide coverage for a "Covered Cause of Loss."

The definition of a "Covered Cause of Loss," however, clearly and unambiguously excludes from coverage any loss or damage identified in the Exclusions section of the Policy:

> 3. COVERED CAUSES OF LOSS
>
> This Coverage Form insures against direct physical loss unless the loss is:
>
> a. Excluded in Section B. EXCLUSIONS;

*See* Exs. A & B at § (A)(3)(a); *see* Ex. C at p.3 of 42.  The Exclusions section of the policies, in turn, clearly and unambiguously excludes losses arising from or relating to a virus:

> **B. EXCLUSIONS**
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> \* \* \*
>
> **i. Virus or Bacteria**
>
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*See* Exs. A & B at § (B)(1)(i)(1); *see* Ex. C at pp. 21 and 23 of 42.

Even if a Covered Cause of Loss exists, and no exclusion applies, the policies still only

5

provide coverage for loss of business income where there has been a "necessary" suspension of operations:

> **5. ADDITIONAL COVERAGES**
>
> \* \* \* \*
>
> **g. Business Income**
>
> **(1) Business Income with Ordinary Payroll Limitation**
>
> (a) We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises.

*See* Exs. A & B at § (A)(5)(g); *see* Ex. C at p. 6-7 of 42.  Lastly, the policies expressly exclude coverage for "Consequential Losses" caused by or resulting from "[d]elay, loss of use or loss of market."  *See* Exs. A & B at § (B)(2)(b); *see* Ex. C. at pp. 23-24 of 42.

### III. APPLICABLE LEGAL STANDARDS.

#### A. Motion to Dismiss.

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must proffer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*.  In other words, plaintiffs must "nudge their claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Mere "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 555.

Although the Court typically limits its analysis on a Motion to Dismiss to the allegations of the complaint, "[t]he law is clear that in considering a Motion to Dismiss, the Court is not limited to evaluating the complaint alone; it can also consider . . . documents that form the basis of a claim . . . and 'documents whose contents are alleged in the complaint and whose authenticity no party questions,' even though they 'are not physically attached to the pleading. . . .'" *Irene J. Kendrick Revocable Living Trust v. South Hills Movers, Inc.*, 2014 WL 5685680 at *2 (W.D. Penn. Nov. 4, 2014) (citations omitted).

### B.     Construction of Insurance Policy Terms.

"The general rules of contract interpretation apply to the interpretation of insurance policies." *Westport Insurance Corporation v. Hippo Fleming & Pertile Law Offices*, 349 F.Supp.3d 468, 475 (W.D. Penn. 2018). "Under Pennsylvania law, courts interpret unambiguous writings as a matter of law, while ambiguous writings are interpreted by the finder of fact." *Id.*

"The court's goal when interpreting a policy is to 'ascertain the intent of the parties as manifested by the terms used in the insurance policy.'" *Gerow v. State Auto Property & Casualty Company*, 346 F.Supp.3d 769, 778 (W.D. Penn. 2018). "Words of 'common usage' in an insurance policy are to be construed in their natural, plain, and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions." *Id.* "[C]ourts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of 'interpreting' the policy." *Id.* Accordingly, "if the policy's terms are clear and unambiguous, the court gives effect to that clear language." *Id.*; *see also Westport Insurance* at 476 (same).

## IV. THE VIRUS EXCLUSION IN THE POLICIES BARS MR. ARGENAS'S CLAIM AS A MATTER OF LAW.

### A. The Virus Exclusion Is Clear and Unambiguous.

This Court must apply the language of the policies as written. Here, the applicable language is clear and unambiguous: the policies expressly exclude from coverage any loss or damage caused directly or indirectly by a virus, and regardless of any other cause or event contributing to any alleged loss. Specifically, the policies provide as follows:

> **B. EXCLUSIONS**
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> \* \* \*
>
> **i. Virus or Bacteria**
>
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*See* Ex. C at p. 21, 23 of 42. There is no ambiguity whatsoever in this language.

Furthermore, Mr. Argenas's claims fall squarely within the plain language of the policies' virus exclusion. Mr. Argenas, for example, alleges that the coronavirus is a global disease and that governmental orders have been issued to control its spread. *See* FAC ¶ 1. Mr. Argenas further alleges that his ice cream shop is susceptible to contamination and has been damaged by the coronavirus:

> 67. Plaintiff's restaurant is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the restaurant, there is an ever-present risk that the Insured Property is contaminated and would continue

8

> to be contaminated.
>
> 68. Businesses like Plaintiff's ice cream shop are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to a facility with open-air ventilation.
>
> 69. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another and because the nature of the restaurant and activity exposes to high level of respiratory droplets and fomites being released into the air of the property.
>
> * * * *
>
> 72. The virus is physically impacting Plaintiff . . . .
>
> 73. Contamination and damage to Plaintiff's Insured Properties and surrounding property caused by the Coronavirus constitute "direct physical loss" and are Covered Causes of Loss within the meaning of the Policy.

*See* Compl. ¶¶ 67-69, 72-73. Mr. Argenas also alleges that such "contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the ice cream shop." *Id.* at ¶ 36.

In sum, Mr. Argenas's claim is based on alleged losses resulting (directly or indirectly) from the coronavirus – a cause of loss or damage expressly excluded from coverage under the terms of the policies. This Court must apply the clear and unambiguous policy language as written. Indeed, this Court and other courts applying Pennsylvania law have enforced a variety of clear and unambiguous policy exclusions, including similar mold/bacteria exclusions. *See, e.g., Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 349 F.Supp.3d 468, 476-477 (W.D. Penn. 2018) (enforcing outside business exclusion); *Northern Ins. Co. of N.Y. v. Aardvark Assocs., Inc.*, 942 F.2d 189, 194 (3rd Cir. 1991) (Alito, J.) (enforcing pollution exclusion); *Sentinel Ins. Co., Ltd.*

*v. Monarch Med Spa, Inc.*, 105 F.Supp.3d 464, 472 (E.D. Penn. 2015) ("fungi bacteria virus exclusion . . . bar[s] coverage"); *Mount Pocono Motel, Inc. v. Tuscarora Wayne Ins. Co.*, 2014 WL 11351696 at *4 (Penn. C.P. July 8, 2014) ("Fungi or Bacteria Exclusion" held "to be clear and unambiguous in nature"). Accordingly, this Court should apply the virus exclusion as written and dismiss Mr. Argenas's claim as a matter of law.

### B. The Virus Exclusion Is Not Invalidated by Mr. Argenas's Purported "Expectations" Or by Public Policy.

In apparent recognition that the plain language of the virus exclusion bars his claim, Mr. Argenas alleges he had a "reasonable expectation" the policies would provide coverage for the coronavirus, and that the virus exclusion "violates public policy." *See* FAC ¶¶ 25-29. These allegations do not save Mr. Argenas's claim.

First, as this Court has stated, the "'insured may not complain that its reasonable expectations have been frustrated when the applicable policy limitations are clear and unambiguous.'" *See While Enchilada, Inc. v. Travelers Property Casualty Company of America*, 581 F.Supp.2d 677, 690 (W.D. Penn. 2008) (citing cases). Here, the terms of the virus exclusion are clear and unambiguous. Accordingly, Mr. Argenas cannot avoid the virus exclusion by alleging he had contrary expectations.

Second, the Pennsylvania Supreme Court repeatedly has refused to invalidate insurance policy exclusions based on vague assertions of public policy. *See Williams v. GEICO Government Employees Insurance Company*, 613 Pa. 113, 120 (2011) (citing cases). Specifically, only a "clearly expressed public policy" may override clear and unambiguous insurance policy exclusions. *Id.* "Public policy," in turn, "is to be ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interest." *Id.* "In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or

of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy." *Id.* at 120-121 (quoting *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558 (1998)).

Here, there is no clearly expressed public policy against a virus exclusion: there is no long governmental practice against virus exclusions; there are no statutory enactments against virus exclusions; and there are no legal precedents against virus exclusions. To the contrary, as discussed above, courts applying Pennsylvania law routinely have enforced insurance policy exclusions, including mold exclusions, similar to the virus exclusion at issue here. In short, Mr. Argenas cannot satisfy his "high burden" of demonstrating a conflict between the virus exclusion and a clearly expressed public policy. *Williams* at 121. There is no such conflict. Accordingly, the virus exclusion should be enforced, and Mr. Argenas's claim should be dismissed as a matter of law.

## V. THE CIVIL AUTHORITY PROVISION OF THE POLICIES DO NOT PROVIDE COVERAGE TO PLAINTIFFS.

Even if the virus exclusion somehow did not apply – and it applies here – coverage still does not exist under the policies for his alleged losses. Specifically, Mr. Argenas does not have coverage under the "Civil Authority" provision cited in his Complaint.

### A. The Virus Exclusion Precludes Civil Authority Coverage.

No Civil Authority coverage exists here because such coverage is excluded by the virus exclusion. Specifically, Civil Authority coverage only exists where there is a "Covered Cause of Loss." *See* Exs. A & B at § (A)(5)(j); *see* Ex. C at p.8. A "Covered Cause of Loss," in turn, expressly *excludes* any loss or damage identified in the Exclusions section of the Policy:

> 3. COVERED CAUSES OF LOSS
>
> This Coverage Form insures against direct physical loss unless the

11

>   loss is:
>
>   a. Excluded in Section B. EXCLUSIONS;

*See* Exs. A & B at § (A)(3); *see* Ex. C at p.3. Because the virus exclusion expressly *excludes* coverage for loss or damage arising (directly or indirectly) from the coronavirus, there is no "Covered Cause of Loss," and Mr. Argenas has no coverage under the Civil Authority provision – or any other provision – of the policies as a matter of law.

### B.   No Order Has Prohibited Access to The Insured Premises.

Even absent the virus exclusion, no Civil Authority coverage exists because Mr. Argenas (and his customers) have always had access to the insured premises. Civil Authority coverage only arises when an "action of civil authority . . . prohibits access to the described premises[.]" *See* Exs. A & B at § (A)(5)(j); *see* Ex. C at p.8. Mr. Argenas, however, does not (and cannot) allege that access to his Twister's Ice Cream store has been prohibited by any civil authority. To the contrary, Mr. Argenas expressly alleges that take out services are still permitted at food establishments. *See* FAC ¶ 46.

Furthermore, this Court may take judicial notice of the governmental orders cited by Mr. Argenas in the Complaint. *McCullough v. Advest, Inc.*, 2017 WL 3675787 at *3 (W.D. Penn. Aug. 25, 2017) (matters of public record properly considered in deciding Rule 12(b)(6) motion). Specifically, the Pennsylvania Governor's March 19, 2020 Order cited by Mr. Argenas expressly makes clear that food establishments such as Mr. Argenas's ice cream shop are permitted to continue their operations as follows:

>   Businesses that offer carry-out, delivery, and drive-through food and beverage service may continue, so long as social distancing and other mitigation measures are employed to protect workers and patrons.

*See* March 19, 2020 Order at § 2 (attached as Ex. D). In other words, neither Mr. Argenas nor his

customers were denied access to the insured premises, *i.e.*, the Twister's Ice Cream store. Courts routinely deny coverage under similar circumstances. *See, e.g.*, *Ski Shawnee, Inc. v. Commonwealth Insurance Company*, 2010 WL 2696782 at *4 (M.D. Penn. July 6, 2010) ("where the action of a civil authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action is not covered under policies like the one in the instant case").

In sum, the virus exclusion plainly excludes coverage under the Civil Authority provision of the policies, and Mr. Argenas also has failed to allege that access to the insured premises has been prohibited. Accordingly, Mr. Argenas's claim should be dismissed as a matter of law.

## VI. MR. ARGENAS HAS NOT SUFFERED A NECESSARY SUSPENSION OF OPERATIONS.

The policies only provide coverage for business income loss that arises from "a necessary suspension of your 'operations.'" *See* Exs. A & B at § (A)(5)(g); *see* Ex. C at p. 6-7. Here, Mr. Argenas does *not* (and cannot) allege that any suspension of his operations was necessary. To the contrary, as discussed, Mr. Argenas was not denied access to his premises and was permitted to continue serving ice cream pursuant to the governmental orders cited in the First Amended Complaint. Mr. Argenas's own election to not open his seasonal store and offer pick up, delivery and drive-through services as permitted by the governmental orders does not amount to a *necessary suspension* as a matter of law. Furthermore, the policies expressly exclude coverage for consequential losses caused by or resulting from "[d]elay, loss of use or loss of market." *See* Exs. A & B at § (B)(2)(b); *see* Ex. C. at pp. 23-24. These undisputed facts and policy terms show there simply has been no necessary suspension of operations. Accordingly, no coverage exists, and Mr. Argenas's claim should be dismissed for this reason as well.

## VII. ADDITIONAL GROUNDS FOR DISMISSAL.

In addition to the grounds set forth above, Mr. Argenas's claim also fails for lack of personal jurisdiction under Rule 12(b)(2). In his First Amended Complaint, Mr. Argenas purports to seek certification of a national class of insureds. *See* FAC ¶ 56. Yet, this Court lacks personal jurisdiction over the claims of non-forum putative class members. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773, 1780 (2017); *see also Practice Management Support Services, Inc. v. Cirque Du Soleil, Inc.*, 301 F.Supp.3d 840, 860-862, 864 (N.D. Ill. 2018) (applying *Bristol-Myers* to class action and dismissing claims of non-forum class members for lack of personal jurisdiction). No class exists or should exist, and the non-forum class claims should be dismissed for lack of personal jurisdiction.

## VIII. CONCLUSION.

As a matter of law and basic contract interpretation, Mr. Argenas has no cognizable claim for coverage under the policies. Accordingly, this Court should dismiss Mr. Argenas's claim with prejudice because Mr. Argenas's claim cannot be saved through any amendment or re-pleading.

    Respectfully submitted,

Date: July 29, 2020    DEL SOLE CAVANAUGH STROYD LLC

    By */s/ Arthur H. Stroyd, Jr.*
    Arthur H. Stroyd, Jr.
    PA Id. No. 15910
    Three PPG Place, Suite 600
    Pittsburgh, PA 15222
    Tel: (412) 261-2393
    Fax: (412) 261-2110
    astroyd@dscslaw.com

    *Counsel for Defendant Nationwide Property and Casualty Insurance Company*

**Of Counsel**

Michael H. Carpenter (*pro hac vice* forthcoming)
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145
carpenter@carpenterlipps.com

Aneca E. Lasley (*pro hac vice* forthcoming)
Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio  43215
Tel:  (614) 365-2700
Fax:  (614) 365-2499
aneca.lasley@squirepb.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing BRIEF IN SUPPORT OF DEFENDANT NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT was filed electronically on July 29, 2020.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel, including the following:

>Daniel Levin, Esq.
>LEVIN SEDRAN & BERMAN LLP
>510 Walnut Street, Suite 500
>Philadelphia, PA 19106-3697
>
>*Attorney for Plaintiff*

>/s/ *Arthur H. Stroyd, Jr.*
>*Counsel for Defendant Nationwide Property and Casualty Insurance Company*